**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

AIRBORNE ATHLETICS, INC.,

                Petitioner,

v.

SHOOT-A-WAY, INC.,

                Respondent.

Case No. 25-cv-3137 (LMP/SGE)

**AMENDED ORDER ON
MOTION TO CONFIRM
ARBITRATION AWARD**

---

Robert Courtney and Stuart A. Nelson, **Fish & Richardson P.C., Minneapolis, MN**; and Paul Chamberlain, **Chamberlain Law Firm, PLLC, Wayzata, MN**, for Petitioner.

Timothy A. Sullivan, **Ratwik, Roszak & Maloney, P.A., Saint Paul, MN**; and Jeffrey S. Standley, Fred Michael Speed, Jr., and Beverly A. Marsh, **Standley Law Group LLP, Dublin, OH**, for Respondent.

In this latest chapter of a contest over attorneys' fees, Petitioner Airborne Athletics, Inc. ("Airborne"), petitions the Court to confirm an arbitration award under the Federal Arbitration Act. ECF No. 1. Respondent Shoot-a-Way, Inc. ("Shoot-a-Way"), moves to vacate the arbitration award on the basis that the arbitrator exceeded her power. ECF No. 21. Because the Court concludes that the arbitrator did not exceed her power, the Court grants Airborne's petition to confirm the award and denies Shoot-a-Way's motion to vacate.

## BACKGROUND

Airborne and Shoot-a-Way both design and manufacture basketball training devices. ECF No. 43 at 4; ECF No. 29-1 ¶ 3.[1] In 2010, Airborne filed suit in this District accusing Shoot-a-Way of patent infringement. *Airborne Athletics, Inc. v. Shoot-A-Way, Inc.*, No. 10-cv-3785 (SRN/JJK), ECF No. 1 (D. Minn. Aug. 31, 2010). That litigation ended in a settlement agreement in 2013 (the "2013 Settlement").[2] *See id.*, ECF No. 208 (D. Minn. Feb. 19, 2013). Relevant here, the 2013 Settlement included a broad "ten year arbitration period during which the parties shall resolve any claim first by mediation and then by arbitration." ECF No. 3-2 ¶ 6. The arbitration clause required the party asserting a claim first to notify the accused party and then to schedule an informal discussion, and, if agreement was not reached informally, the parties would proceed to mediation. *Id.* ¶ 6(a)–(b). If mediation proved unsuccessful, the parties would proceed to arbitration "under the commercial rules of the American Arbitration Association" ("AAA"). *Id.* ¶ 6(b). The clause also contained a fee-shifting provision which states:

> If the Plaintiff in the arbitration is not successful, the Plaintiff shall be liable to the Defendant for attorney fees and costs (including the arbitrator's fees) for having to defend the claim. The Plaintiff will be deemed to be not successful if the arbitration is resolved with a judgment less than the final offer made by the Defendant at the mediation.

*Id.* ¶ 6(e).

---

[1] ECF No. 43 is a sealed document consisting of an opening statement made by Airborne's CEO to an arbitration panel. A redacted copy can be found at ECF No. 42-1.

[2] A redacted copy of the 2013 Settlement can be found at ECF No. 2-4.

## I.    The First Arbitration

In 2020, Shoot-a-Way claimed that Airborne was infringing six of Shoot-a-Way's patents and additionally asserted claims of trademark infringement and false advertising. ECF No. 29-1 ¶ 18.  The parties were unable to resolve the issue informally, so they proceeded to mediation presided over by retired United States Magistrate Judge Robert Faulkner on December 2, 2020 (the "December 2020 Mediation").  ECF No. 29-1 ¶¶ 21–25; ECF No. 30-2 at 2.  Mediation was unsuccessful, so the dispute proceeded to arbitration, and on December 20, 2021, Arbitrator Roger W. Parkhurst ruled that Airborne infringed one of Shoot-a-Way's patents.  ECF No. 3 at 7.  Arbitrator Parkhurst awarded Shoot-a-Way $51,300 in monetary damages and enjoined Airborne from any future infringement.  *Id.*

Shortly after the December 2021 award (the "December 2021 Award"), Airborne asserted that it was entitled to an award of attorneys' fees under the 2013 Settlement, arguing that the $51,300 award was less than Airborne's final settlement offer made during the December 2020 Mediation.  *See* ECF No. 29-2 at 6–10.  Arbitrator Parkhurst denied Airborne's request to consider the issue, concluding that Airborne's attempt to raise the issue for the first time after the close of arbitration was procedurally improper.  *Id.*  But Arbitrator Parkhurst explained that Airborne's claim for attorneys' fees could be separately mediated and arbitrated under the 2013 Settlement.  *Id.* at 9.

Airborne then filed suit in this District seeking to partially vacate the December 2021 Award on the grounds that Arbitrator Parkhurst improperly declined to consider its fee-shifting claim.  *See generally Airborne Athletics, Inc. v. Shoot-A-Way, Inc.*, No. 22-cv-

696 (NEB/ECW), ECF No. 1 (D. Minn. Mar. 16, 2022).  On November 30, 2022, United States District Judge Nancy E. Brasel confirmed the December 2021 Award.  *See generally id.*, ECF No. 65 (D. Minn. Nov. 30, 2022).  Judge Brasel, like Arbitrator Parkhurst, noted that Paragraph 6 of the 2013 Settlement still provided a route for Airborne to seek its attorneys' fees through further mediation and arbitration of the claim.  *Id.* at 16.

## II.    The Second Arbitration

Almost immediately after Judge Brasel confirmed the December 2021 Award, Airborne sent notice to Shoot-a-Way of its claim for $3,012,683.11 in attorneys' fees.  ECF No. 42-2 at 1.  Shoot-a-Way declined to pay, so on October 12, 2023, Airborne filed a demand for arbitration.[3]  ECF No. 30-3.  The parties selected Dr. Cheryl Agris as the arbitrator.  *See generally* ECF No. 2-5.

### A.    Shoot-a-Way's Liability for Airborne's Attorneys' Fees from the 2021 Arbitration

The first and primary question put to Arbitrator Agris was whether Airborne was entitled to recover its attorneys' fees incurred during the first arbitration in December 2021 ("2021 Arbitration").  Both parties agreed that under the 2013 Settlement, Airborne would be entitled to its fees if the value of the final offer Airborne made during the December 2020 Mediation was greater than the $51,300 awarded Shoot-a-Way after the 2021 Arbitration.

---

[3]    The parties engaged in a mediation on September 25, 2023, which was presided over by retired United States Magistrate Judge Jeffrey Keyes.  ECF No. 2-1 at 5.  They were unable to come to a resolution.  *Id.*

4

Because the value of the offer had not been litigated before the second arbitration, which was initiated in October 2023 but took place in 2024 ("2024 Arbitration"), it became the first question Arbitrator Agris set out to answer. ECF No. 30-3; ECF No. 30-4. On February 11, 2024, Arbitrator Agris submitted four questions to the parties:

(1)    What was Airborne's final settlement offer?

(2)    Did Airborne condition its final settlement offer on receiving a commitment from Shoot-A-Way not to sue Airborne again for any past, present, or future Airborne products that may otherwise infringe any of the Shoot-A-Way patents or trademarks in suit or future Shoot-A-Way patents related to the patents in suit?

(3)    Did Airborne make a legal settlement offer?

(4)    Was Airborne's offer made in bad faith such that it would justify finding that no offer was made?

ECF No. 30-4 at 4.

Both parties represented that Airborne's final monetary offer to Shoot-a-Way was $800,000. ECF No. 43-1 ¶ 12; ECF No. 29-1 ¶ 33; ECF No. 30-2 at 2. But the parties disagreed as to whether Airborne's final offer depended on receiving from Shoot-a-Way a covenant not to sue Airborne again. ECF No. 30-4 at 6–7. Airborne asserted that it had not demanded a covenant not to sue during the December 2020 Mediation, relying primarily on a declaration and testimony from its CEO, Doug Campbell. *See* ECF No. 30-6 at 3–4 (Airborne asserting to Arbitrator Agris that it "did not condition any of its offers on receiving broad new rights for unasserted patents or future Airborne products," and that "Airborne did not include material non-monetary terms in any of its offers as doing so would have complicated the application of Paragraph 6(e) post-arbitration").

5

Shoot-a-Way, on the other hand, argued that Airborne had conditioned its final offer on such a covenant. Shoot-a-Way asserted that although the covenant not to sue was never put in writing, Judge Faulker had informed Shoot-a-Way multiple times during the mediation that Airborne's offer depended on a covenant not to sue. *See* ECF No. 30-5 at 3–4. Indeed, Shoot-a-Way relied on a letter it sent to Judge Faulkner mere days after the arbitration, which explained its understanding that Airborne's final offer included:

(1)     A covenant not to sue under the six asserted patents, and any future patents issuing therefrom (such as from continuations, divisionals, reissues), for all of the past, present, and future sales of all Airborne products (i.e., past present, and future products).

(2)     The covenant not to sue "included" Airborne's use of Shoot-a-Way's registered trademark for "THE GUN" and Airborne's continued false advertisements.

(3)     A release of all claims that were brought or could be brought by Shoot-a-Way.

ECF No. 30-1 at 2–3; *see also* ECF No. 29-1 ¶¶ 30, 33 (Shoot-a-Way's owner declaring that the final offer contained a covenant not to sue).

Ultimately, Arbitrator Agris concluded as a factual matter that Airborne had demanded a covenant not to sue in its final offer in the December 2020 Mediation. ECF No. 30-4 at 7. Arbitrator Agris noted that not only did Shoot-a-Way attest that the covenant not to sue was requested, but that Airborne's CEO also admitted that he told the mediator in December 2020 that he was "seeking a covenant not to sue." *Id.* Moreover, CEO Campbell reaffirmed that position in testimony taken during both arbitrations. *Id.* at 7–9. Based on this record, Arbitrator Agris determined that a covenant not to sue was part of the final offer.

6

Arbitrator Agris then considered Shoot-a-Way's contention that the final offer, if it included a covenant not to sue, was not a "legal" final offer. Shoot-a-Way argued that the offer was not a legal one because it: (1) was not made in writing; (2) did not satisfy Rule 68 of the Federal Rules of Civil Procedure; and (3) did not include all material terms. ECF No. 30-4 at 12.

Relevant here, Arbitrator Agris rejected Shoot-a-Way's invitation to apply the standards of Rule 68 because that Rule is "applied in a litigation context, not the flexible procedures of [arbitration]," and because nowhere in the 2013 Settlement was the Rule's applicability contemplated. *Id.* at 13–14. Indeed, AAA Rules applied. ECF No. 30-3 at 2. Arbitrator Agris then concluded that the final offer contained all material terms. Even though "there may have been a difference in views as to the exact scope of products encompassed in the proposed covenant not to sue," those details were not material as they could have "been negotiated at a later date." *Id.* at 14-15.

As a result, Arbitrator Agris concluded that Airborne's final offer in the December 2020 Mediation was valid and legal. Further, she concluded that Airborne's promise to pay $800,000 in exchange for Shoot-a-Way's covenant not to sue Airborne related to "any of [Airborne's] past, present or future products derived from its past or present products that may otherwise infringe [Shoot-a-Way]'s patents and trademarks named in [Shoot-a-Way]'s July 6, 2020 and August 13, 2020 letters or patents issuing from continuation applications of said named patents pending as of December 2, 2020." *Id.* at 22.

Having determined that the offer included a covenant not to sue which was, by its terms, non-monetary, Arbitrator Agris next had to consider what monetary value the

covenant not to sue held in order to determine the total monetary value of Airborne's final offer. Arbitrator Agris valued the covenant somewhere between $150,000 to $300,000 to Airborne. ECF No. 3 at 38. Subtracting that amount from the $800,000 Airborne offered to pay Shoot-a-Way, Arbitrator Agris valued the final offer between $500,000 to $650,000. *Id.* And because this was more than the $51,300 final award from the 2021 Arbitration, Arbitrator Agris concluded that Shoot-a-Way was liable for Airborne's attorneys' fees from that arbitration. *Id.* at 53. Arbitrator Agris therefore awarded Airborne $2,649,737.25 in fees and costs from the 2021 Arbitration. ECF No. 2-1 at 21.

> **B.    Shoot-a-Way's Liability for Airborne's Attorneys' Fees from the Second Arbitration**

The primary issue in the 2024 Arbitration, or at least the issue that caused that second arbitration, was whether Shoot-a-Way was liable for Airborne's attorneys' fees incurred during the 2021 Arbitration. Arbitrator Agris ruled that Shoot-a-Way was indeed liable. As the second arbitration advanced, however, both parties placed before Arbitrator Agris a second issue: whether either party was entitled to attorneys' fees incurred during the second arbitration.

The issue arose in Airborne's initial demand for the second arbitration. In that written demand, Airborne described its claim as one for "attorney's fees and costs (including the arbitrator's fees) for having to defend the claim" from the 2021 Arbitration. ECF No. 30-3 at 2. But in a separate section of the demand titled "Other Relief Sought," Airborne checked boxes for attorneys' fees, interest, and arbitration costs. *Id.* In total,

Airborne claimed "$3,068,155 plus upward adjustment for liabilities incurred after January 2023." *Id.*

Shoot-a-Way answered Airborne's demand, arguing that Airborne was not entitled to attorneys' fees from the 2021 Arbitration. *See generally* ECF No. 48-1. On both of the first two pages of their answer, Shoot-a-Way noted that it (1) intended to bring a counterclaim for its attorneys' fees incurred during the 2024 Arbitration; and (2) sought an award of its "attorney's fees, arbitration costs, other case costs and expert fees." *Id.* at 2–3, 10. In explaining its counterclaim, Shoot-a-Way reasoned that if it was determined that Airborne was not entitled to its attorneys' fees for the 2021 Arbitration, Shoot-a-Way "by operation of paragraph 6e of the 2013 Settlement Agreement" would be entitled to its attorneys' fees and costs to defend the 2024 Arbitration. *Id.*

In supplemental briefing, Airborne again asserted that it was not only entitled to its attorneys' fees from the 2021 Arbitration, but also to its attorneys' fees from the 2024 Arbitration. ECF No. 42-6 at 5–6. Airborne argued that Minnesota law "provides for a claimant to seek fees and costs associated with pursuing a fee petition," and that "all of Airborne's attorneys' fees and costs [] are directly related to the 2021 Arbitration Award." *Id.* at 6 (citing *In re RFC*, 399 F. Supp. 3d 827, 858 (D. Minn. 2019) (citing *Boundary Waters Bank v. McGaughey*, No. A15-1950, 2016 WL 1397305, at *1, 5 (Minn. Ct. App. Apr. 11, 2016)). Airborne alternatively argued that it was entitled to the fees because "[e]ven in equity, it would surely be unfair to allow Shoot-A-Way a windfall and not [to] pay for the damage it caused in the present arbitration." *Id.* Shoot-a-Way objected, arguing that Airborne—as the arbitration plaintiff in the 2024 Arbitration—was not entitled to

9

attorneys' fees because the 2013 Settlement contemplated the payment of attorneys' fees only to an arbitration defendant, not an arbitration plaintiff.  ECF No. 2-1 at 6.

Arbitrator Agris broached the issue in her interim award, when she explained she could neither grant nor deny Shoot-a-Way's counterclaim for attorneys' fees "until it is determined which party is deemed to be the Prevailing Party in the instant arbitration." ECF No. 3 at 46.  She therefore reserved the issue for her final award because "[i]t is necessary to determine said Prevailing Party in order to determine who is entitled to attorneys' fees and costs in the instant arbitration and correspondingly whether to grant or deny respondent's counterclaim." *Id.* at 67.

Arbitrator Agris fully considered the issue in her final award.  She denied Shoot-a-Way's counterclaim for attorneys' fees stemming from the 2024 Arbitration because Shoot-a-Way was not the prevailing party in that arbitration.  ECF No. 2-1 at 5. Arbitrator Agris then granted Airborne's request for attorneys' fees for three reasons.  First, she held that "Minnesota Courts have generally allowed recovery of Attorneys' fees and disbursements in a number of situations," citing *RFC*, 399 F. Supp. 3d at 857–88 (allowing attorneys' fees for "the work performed, and costs incurred, in preparing" a fee petition), and *Boundary Waters Bank*, 2016 WL 1397305 at *5 (same).  *Id.* at 7.[4]  This was one such situation.  *Id.*

---

[4]    It appears that Arbitrator Agris provided an incorrect case citation for *RFC*, erroneously citing an earlier opinion from the same case.  *See* ECF No. 2-1 at 6 (citing *In re RFC,* No. 13-cv-3451, 2019 WL 1237166 (D. Minn. Mar. 18, 2019)).  Airborne suggests, and Shoot-a-Way does not contest, that Arbitrator Agris's citation was a clerical error and she intended to cite *In re RFC*, 399 F. Supp. 3d 827 (D. Minn. 2019).

Second, she held that Airborne:

would be entitled to recover Attorneys' Fees and Costs in the instant arbitration even in view of ¶ 6(e) of the 2013 Settlement Agreement. Said Settlement Agreement provides for situations where the "defendant" (Respondent) would be deemed to be the Prevailing Party and thus, be entitled to Attorneys' Fees and Costs. It would therefore follow, even though not explicitly stated, that in the interests of, at a minimum, equity and fairness, Plaintiff (Claimant) should also be entitled to its Attorneys' Fees and Costs, if it is deemed to be the Prevailing Party.

*Id.* at 8.

And third, she held that Rule 49(d)(ii) of the AAA Commercial Rules, which allows an arbitrator to award "attorneys' fees if all parties have requested such an award," authorized the award because "both parties . . . request[ed] such an award in various submissions, beginning with the Claimant in its Demand and the Respondent in its Counterclaim." *Id.* Having determined a legal basis to do so, Arbitrator Agris awarded Airborne $1,233,308.55 in attorneys' fees stemming from the 2024 Arbitration. *Id.* at 21.

### C.    Whether Airborne is Entitled to Prejudgment Interest for Its 2021 Arbitration Attorneys' Fees

Finally, the parties disagree about whether Airborne was entitled to certain prejudgment interest. ECF No. 2-1 at 12. Specifically, Airborne sought prejudgment interest on the total amount of its attorneys' fees for the 2021 Arbitration. *Id.* Airborne grounded its request in Minn. Stat. § 549.09, which generally authorizes "preverdict, preaward, or prereport interest on pecuniary damages . . . from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim." Minn. Stat. § 549.09, subd. 1(b). Airborne reasoned that it provided "written notice" of its claim for attorneys' fees stemming from the 2021 Arbitration on

December 19, 2022, and should therefore receive prejudgment interest from that date forward.  ECF No. 3 at 66.

Shoot-a-Way argues that Airborne was not entitled to prejudgment interest, pointing to Minn. Stat. § 549.09, subd. 1(b)(5), which disallows prejudgment interest for "that portion of any verdict, award, or report which is founded upon interest, or costs, disbursements, attorney fees, or other similar items added by the court or arbitrator." Shoot-a-Way reasoned that because Airborne's claim was for attorneys' fees, prejudgment interest was barred by statute.  *Id.* at 66.

Arbitrator Agris concluded that Airborne was entitled to prejudgment interest on its award of attorneys' fees from the 2021 Arbitration under Section 549.09 because "prejudgment interest in an action to collect on an attorney's lien" is allowable, citing several Minnesota state court cases.  ECF No. 2-1 at 15–16.  Arbitrator Agris also justified the award under AAA Commercial Arbitration Rule 49(d)(1), which states that the arbitrator may award "interest at such rate and from such date as the arbitrator may deem appropriate."  *Id.* at 14–15.

## III.   Procedural Background

On August 5, 2025, Airborne brought this petition to confirm the 2024 Arbitration award under 9 U.S.C. § 9, seeking a judgment of $3,969,469.05 plus approximately $696,292.07 in prejudgment interest.  ECF No. 1 at 8–9.  Airborne also filed a motion, in accordance with 9 U.S.C. § 6, to confirm the award.  ECF No. 10.

On August 22, 2025, Shoot-a-Way filed a competing motion to vacate the award under 9 U.S.C. § 10(a)(4).  ECF No. 21.  Shoot-a-Way contends that Arbitrator Agris

12

exceeded her powers in concluding that Airborne was entitled to attorneys' fees for either arbitration and that she separately exceeded her powers in concluding that Airborne is entitled to prejudgment interest.  ECF No. 22 at 27–28.

## ANALYSIS

The Federal Arbitration Act ("FAA") "establishes a liberal federal policy favoring arbitration agreements." *Zeidman v. Lindell Mgmt. LLC*, 145 F.4th 820, 825 (8th Cir. 2025) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018)).  When parties agree to arbitrate, a federal court must uphold the resulting award unless "the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA.  9 U.S.C. § 9.  The FAA sharply limits a federal court's ability to vacate or modify an award.  In fact, the "scope of review of the arbitration award itself is among the narrowest known to the law." *Bhd. of Maint. of Way Emps. v. Terminal R.R. Ass'n of St. Louis*, 307 F.3d 737, 739 (8th Cir. 2002).

Relevant here, Section 10(a)(4) allows a court to modify or vacate an award under only two "extremely narrow" circumstances: (1) where an award fails to "draw[] its essence from the contract" and (2) where the arbitrator's decision "evidences a manifest disregard for the law." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001) (citations omitted).

The first circumstance arises when, for instance, an arbitrator exceeds her powers in interpreting a contract.  When analyzing whether an award draws its essence from the agreement, the merits of the award are irrelevant, and "as long as the arbitrator is even arguably construing or applying the agreement and acting within the scope of h[er] authority, that a court is convinced [s]he committed serious error does not suffice to

13

overturn h[er] decision." *Zeidman*, 145 F.4th at 826 (citation modified). Instead, a district court may overturn an award because of an error in interpretation where the arbitrator departed from the plain language of a contract and "impose[d] h[er] own notions of industrial justice" or applied "some body of thought, or feeling, or policy, or law that is outside the contract." *Id.* (internal quotation marks omitted) (citations omitted).

The second "extremely narrow" circumstance arises when some aspect of the award "evidences manifest disregard for the law." *Id.* at 827 (citation omitted). An award "only manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it." *Id.* (quoting *Hoffman*, 236 F.3d at 462).

Shoot-a-Way asserts that Arbitrator Agris exceeded her powers in three ways. First, that Arbitrator Agris erred in concluding that Airborne's final offer during the December 2020 Mediation was a valid and legal offer. ECF No. 22 at 20–26. Second, that Arbitrator Agris erred in concluding that Airborne was entitled to an award of its attorneys' fees and costs associated with the 2024 Arbitration. *Id.* at 17–20. Finally, that Arbitrator Agris erred in granting Airborne prejudgment interest on the attorneys' fees it was awarded for the 2021 Arbitration. *Id.* at 26–27.

## I.    Attorneys' Fees for the 2021 Arbitration

Shoot-a-Way first contends that Arbitrator Agris erred in ruling that Airborne made a "valid final offer" in the December 2020 Mediation because the offer did not include certain material terms necessary for it to be legal. ECF No. 47 at 10. For its part, Airborne agrees that, under the 2013 Settlement, only an offer that included all "material" or

14

"essential terms" would constitute a legally enforceable offer that would trigger the fee-shifting provision.  ECF No. 40 at 26.

Arbitrator Agris agreed with Shoot-a-Way and Airborne that only an offer that included all material terms would trigger the fee-shifting provision.  ECF No. 30-4 at 13–14.  But her interpretation of Minnesota contract law led her to conclude that "the offer did include all the material terms."  *Id.* (citing and applying *Goddard, Inc. v Henry's Foods, Inc.*, 291 F. Supp. 2d 1021 (D. Minn. 2003), which itself interpreted and applied Minnesota contract law).  Arbitrator Agris explained that, under Minnesota law, material terms are "[o]nly those terms upon which the settlement hinges," and "the fact that the parties" might leave "some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement."  *Id.* at 14 (quoting *Goddard*, 291 F. Supp. 2d at 1028).  Applying this straightforward law, Arbitrator Agris concluded that even though the requested covenant not to sue did not detail "the exact scope of products encompassed," such a detail did not affect the validity of the offer because the "exact scope is not a material term."  *Id.*  Indeed, Arbitrator Agris concluded that Airborne's final offer was "in such a form that [Shoot-a-Way] could have accepted said offer."  *Id.*

Shoot-a-Way contends that Arbitrator Agris manifestly disregarded Minnesota law because although she cited the correct authority, she disregarded that authority when she concluded that "the scope of a covenant not to sue was not material."  ECF No. 22 at 21–22.  But Shoot-a-Way's argument misunderstands what a "manifest disregard for the law" is.  A "manifest disregard for the law" would be, for instance, if Arbitrator Agris correctly explained that only offers that include all material terms are legally binding but then found

legally binding an offer that she herself concluded did not include all the material terms. Shoot-a-Way does not allege such disregard. Instead Shoot-a-Way simply disagrees with her application of the law. But even if the Court agreed that Arbitrator Agris incorrectly determined that the final offer included all material terms,[5] it could not overturn her award. *See Beumer Corp. v. ProEnergy Servs., LLC*, 899 F.3d 564, 565 (8th Cir. 2018) ("An arbitrator does not 'exceed h[er] powers' by making an error of law or fact, even a serious one."); *see also Indus. Steel Constr., Inc. v. Lunda Constr. Co.*, 33 F.4th 1038, 1042 (8th Cir. 2022) ("ISC disagrees with the arbitrator's conclusion, but whether the arbitrator's interpretation is correct is not a question before this court."). Indeed, "[c]onvincing a court of an arbitrator's error—even h[er] grave error—is not enough. . . . The potential for those mistakes is the price of agreeing to arbitration." *Id.* (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572–73 (2013)).

Because Arbitrator Agris did not disregard the law when she concluded that Airborne is entitled to attorneys' fees from the 2021 Arbitration, the Court confirms that portion of Arbitrator Agris's award. As a result, the Court awards Airborne $2,649,737.25. *See* ECF No. 2-1 at 19, 21

## II. Attorneys' Fees for the 2024 Arbitration

Shoot-a-Way alternatively argues that Arbitrator Agris exceeded her powers when she awarded Airborne attorneys' fees incurred during the 2024 Arbitration. ECF No. 22

---

[5] To be clear, the Court takes no opinion on Arbitrator Agris's conclusion. That said, Shoot-a-Way provided the Court with no authority suggesting Arbitrator Agris's conclusion was incorrect.

at 17–20.  Arbitrator Agris based this portion of her award on three distinct grounds: (1) the 2013 Settlement, (2) Minnesota case law, and (3) the fact that both parties requested their attorneys' fees in filings with the AAA.  ECF No. 2-1 at 7–8.  Shoot-a-Way contends that none of these grounds support Arbitrator Agris's award.  ECF No. 22 at 17–20.

The AAA Commercial Rules, which are incorporated into the arbitrations at issue here,[6] authorize an award of attorneys' fees in three scenarios: (1) if all parties request such an award; (2) if the award is authorized by law; or (3) if the award is authorized by the parties' arbitration agreement.  *See* AAA Commercial Rule 49(d)(ii).[7]  If even one of these scenarios applies, the award must be upheld.  *See Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 713–14 (8th Cir. 2011) (holding district court did not err in confirming an arbitral award of attorneys' fees because the parties were "bound by the AAA Commercial Rules" and the arbitrators therefore were "empowered to award such fees" in accordance with those rules).

Here, both parties requested their attorneys' fees.  Airborne requested fees in its initial demand, ECF No. 30-3 at 2, and supplemental briefing, ECF No. 42-6 at 5–6.  And Shoot-a-Way requested fees in its answer, when it twice sought "other relief" of "[a]ttorney's fees, arbitration costs, other case costs and expert fees."  ECF No. 48-1 at 2–

---

[6]     In the 2013 Settlement, the parties agreed to be bound by the AAA Commercial Rules of Arbitration, *see* ECF No. 3-2 ¶ 6(b), and by doing so, they agreed to be bound by Rule 49(d)(ii), *see Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 713–14 (8th Cir. 2011).

[7]     https://www.adr.org/media/sfdkznhv/2025_commercialrules_web.pdf [https://perma.cc/DBU4-86A6].

3.  Because both parties requested attorneys' fees, Arbitrator Agris "was authorized to consider those requests" and did not exceed her authority in awarding fees. *Wells Fargo Bank*, 653 F.3d at 713; *see, e.g.*, *B/E Aerospace, Inc. v. Jet Aviation St. Louis, Inc.*, No. 11 Civ. 8569(SAS), 2012 WL 1577497, at *4 (S.D.N.Y. May 3, 2012) ("In their respective demand and answer, both [parties] sought an award of attorneys' fees, which makes the award permissible."); *CareMinders Home Care, Inc. v. Sandifer*, No. 1:14-cv-03573-WSD, 2015 WL 4040464, at *4 (N.D. Ga. June 29, 2015) (concluding award of attorney's fees was authorized where arbitration plaintiff requested fees "when the arbitration proceeding was initiated" and the arbitration defendant "requested attorneys' fees in its Answer to Respondents' claims and in its post-hearing brief"); *Calton & Assocs., Inc. v. Simmers*, No. 8:20-cv-851-VMC-CPT, 2023 WL 204833, at *9 (M.D. Fla. Jan. 17, 2023) (holding the "parties' request for fees itself empowered the arbitrator to award fees" under AAA Commercial Rules).

Shoot-a-Way argues that Rule 49(d)(ii) does not apply because it "most certainly did *not* make such a general request for attorneys' fees" and instead its various requests for attorney's fees were "directly tied to the fees contractually permitted by paragraph 6(e)" of the 2013 Settlement. ECF No. 47 at 8–9. Shoot-a-Way appears to assert, then, that it was only requesting attorneys' fees for the 2024 Arbitration based on the 2013 Settlement's fee-shifting provision, not making a general request for attorneys' fees under Rule 49(d)(ii).

Shoot-a-Way's attempt to draw a line in the sand between what it labels a "general" request for attorneys' fees (which it acknowledges would trigger Rule 49(d)(ii)) and the

request it made (which it argues did not trigger the rule) is unconvincing.[8]   More importantly, though, Shoot-a-Way's argument is unsupported by citation to any legal authority.  This dooms its argument because the Court may overturn Arbitrator Agris's award only if it "evidences manifest disregard for law," and an arbitrator only manifestly disregards the law after clearly "identify[ing] the applicable, governing law and then proceed[ing] to ignore it."  *Zeidman*, 145 F.4th at 826 (internal quotation marks omitted) (citations omitted).  Shoot-a-Way points to no authority, and the Court has found none, that Arbitrator Agris ignored.  In essence, Shoot-a-Way argues that Arbitrator Agris committed an error in concluding, as a factual matter, that Shoot-a-Way requested attorneys' fees and triggered Rule 49(d)(ii).  But even if that were true, it does not provide a basis to overturn her award; at most, it is instead an error contemplated by the nature of arbitration itself.  *See Beumer Corp.*, 899 F.3d at 566 ("The parties bargained for the arbitrator's decision; if the arbitrator got it wrong, then that was part of the bargain.").[9]

---

[8]   In its initial demand, Airborne described its claim as one seeking attorneys' fees for the 2021 Arbitration.  ECF No. 30-3 at 2.  Separate from its description of the claim, and under a section titled "other relief sought," Airborne specifically asked for "attorneys' fees."  *Id.*  Airborne later reaffirmed its request for attorneys' fees in supplemental briefing, arguing that it was entitled to its fees for the 2024 Arbitration by law or "in equity."  ECF No. 42-6 at 6.  Shoot-a-Way likewise brought a counterclaim for attorneys' fees and, under a separate section entitled "other relief sought," selected "attorneys' fees."  ECF No. 48-1 at 3.  Both parties thereby acknowledged the 2013 Settlement and its fee-shifting provision by virtue of their claims, yet each separately sought the "other relief" of attorneys' fees.  It is hard to read both parties' submissions as anything but a general request for attorneys' fees authorized by the arbitrator's equitable powers under Rule 49(d)(ii).

[9]   To the extent Shoot-a-Way argues that Arbitrator Agris somehow erroneously interpreted the Rule itself, "the AAA's view of the meaning of its rules is of considerable significance."  *York Rsch. Corp. v. Landgarten*, 927 F.2d 119, 123 (2d Cir. 1991).  And

Finally, because the Court concludes that the award of attorneys' fees was properly based on Rule 49(d)(ii), the Court need not address Shoot-a-Way's separate argument that Arbitrator Agris erred in relying on the 2013 Settlement and Minnesota case law as separate bases for the attorneys' fees award. *See Wells Fargo Bank*, 653 F.3d at 713–14 (holding that even if arbitrator could not base award of attorneys' fees on the arbitration agreement itself, the award was separately justified under the AAA Rules); *CareMinders*, 2015 WL 4040464, at *4 (holding that even if the arbitrator's decision to award attorneys' fees under the express terms of the parties' contract was "in error," the contract incorporated the AAA Commercial Rules which "independently empowered the Arbitrator to award attorneys' fees").

Because Arbitrator Agris's award of attorneys' fees to Airborne for the 2024 Arbitration was not in manifest disregard for the law, the Court confirms this portion of the award and awards Airborne $1,233,308.55.  ECF No. 2-1 at 20.

## III.    Prejudgment Interest

Finally, Shoot-a-Way contends that Arbitrator Agris manifestly disregarded the law when she awarded Airborne prejudgment interest to be applied to the award of attorneys' fees to which Airborne was entitled from the 2021 Arbitration.  ECF No. 22 at 26–27. Arbitrator Agris supported the prejudgment interest award by applying Minn. Stat.

---

courts "should defer to arbitrators' interpretations of procedural rules because . . . 'arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it.'"  *Knight v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, C-07-2753 SC, 2008 WL 11384154, at *3 (N.D. Cal. Mar. 26, 2008) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)).

§ 549.09, which establishes a general right to prejudgment interest in some cases. ECF No. 2-1 at 15. Shoot-a-Way acknowledges the statute but asserts that Arbitrator Agris was barred from granting prejudgment interest here by Minn. Stat. § 549.09, which prohibits prejudgment interest from being applied to attorneys' fees "added by the court or arbitrator." ECF No. 22 at 27 (citing Minn. Stat. § 549.09, subd. 1(b)(5)).

Shoot-a-Way presented the same argument to Arbitrator Agris, who rejected it, reasoning that the attorneys' fees from the 2021 Arbitration were not "added by" her decision but were instead the subject matter of the arbitration itself. ECF No. 2-1 at 15 (citing *Gaughan v. Gaughan*, 450 N.W.2d 338, 344 (Minn. Ct. App. 1988)). Shoot-a-Way presents no argument nor cites any authority showing that Arbitrator Agris's conclusion was in "manifest disregard for law." *Zeidman*, 145 F.4th at 826. Instead, it repeats the arguments it made to Arbitrator Agris. ECF No. 22 at 27. And at the hearing on the cross-motions, Shoot-a-Way affirmed that its argument was largely based on equitable principles: that Airborne should not be entitled to recover prejudgment interest simply because it failed to seek attorneys' fees in a procedurally proper manner after the 2021 Arbitration. Whatever the merits of that policy argument, it has no applicability here.

Because Shoot-a-Way has not shown that Arbitrator Agris's prejudgment interest award is in manifest disregard of the law, the Court confirms that portion of the award. As for the amount of interest Airborne is owed, prejudgment interest is calculated under Minn. Stat. § 549.09. *Iota Phi Lambda Sorority, Inc. v. Contenta Glob. Cap. Grp., LLC*, No. 19-cv-532 (SRN/DTS), 2019 WL 4687115, at *26 (D. Minn. Sept. 26, 2019). As Arbitrator Agris correctly determined, that statute requires prejudgment interest "be

21

calculated from either 'the time of commencement of the action . . . or the time of a written notice of claim, whichever occurs first.'" *Id.* (quoting Minn. Stat. § 549.09, subd. 1(b)). Neither party disputes that Airborne provided Shoot-a-Way with the written notice of its claim to attorneys' fees from the first arbitration on December 19, 2022. Accordingly, Airborne is entitled to prejudgment interest from that day through the date of this judgment. *Id.*

By statute, the Court must set a rate of 10% per year. *See id.* (citing Minn. Stat. § 549.09, subd. 1(c)(2)) ("Minnesota mandates a 10% flat prejudgment interest rate—regardless of the type of claim—where the damages are over $50,000."). The applicable formula is:

($2,649,737.25 * 0.1) ÷ 365 = $725.95 in daily interest.

*See id.* at \*27. That $725.95 in daily interest, multiplied by the 1,187 days that have passed since December 19, 2022, results in $861,702.65 in total interest. As a result, the Court awards Airborne $861,702.65 in prejudgment interest.

## IV. Postjudgment Interest and Arbitration Costs

Airborne further seeks postjudgment interest on the entire judgment entered by this Court and moves to confirm another portion of Arbitrator Agris's award granting it $86,423.25 in arbitration-related costs. ECF No. 1 at 9. Shoot-a-Way presents no opposition to either request, so the Court grants both.

Postjudgment interest "is a procedural matter governed by federal law." *Swope v. Siegel-Robert, Inc.*, 243 F.3d 486, 497 (8th Cir. 2001). Such interest "shall be allowed on any money judgment in a civil case recovered in a district court," and the rate is set by

statute.  28 U.S.C. § 1961(a).  Postjudgment interest is "mandatory under 28 U.S.C. § 1961" and "should therefore be awarded."  *Travelers Prop. Cas. Ins. of Am. v. Nat'l Union Ins. of Pittsburgh*, 735 F.3d 993, 1007 (8th Cir. 2013) (citation omitted).  The Court therefore grants postjudgment interest at the rate set by 28 U.S.C. § 1961(a) and confirms Arbitrator Agris's award of $86,423.25 in costs.

**CONCLUSION**

The FAA allows a federal court to vacate an arbitration award only where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  The FAA requires a court to confirm an award unless "the award is vacated, modified, or corrected as prescribed in sections 10 and 11."  9 U.S.C. § 9.  The Court concludes that Arbitrator Agris did not exceed or imperfectly execute her powers, and as a result, the Court must confirm her award.

Accordingly, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   Airborne's Motion to Confirm Arbitration Award (ECF No. 10) is **GRANTED**.  Each portion of the award is as follows:

> i.   $2,649,737.25 in monetary damages as awarded by Arbitrator Agris for attorneys' fees from the first arbitration in 2021;
>
> ii.   $1,233,308.55 as awarded by Arbitrator Agris for attorneys' fees from the second arbitration in 2024;
>
> iii.   $861,702.65 in prejudgment interest as awarded by Arbitrator Agris;
>
> iv.   $86,423.25 in costs as awarded by Arbitrator Agris;

2.   Additionally, Airborne's request for postjudgment interest is **GRANTED**, accruing from the date judgment is entered until the judgment is satisfied, in an amount to be calculated in accordance with 28 U.S.C. § 1961; and

3.   Shoot-a-Way's Motion to Vacate Arbitration Award (ECF No. 21) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 23, 2026

*s/Laura M. Provinzino*

Laura M. Provinzino
United States District Judge